**HAGNER & ZOHLMAN, LLC**
57 Kresson Road
Cherry Hill, New Jersey 08034
(856) 663-9090
Attorneys for the Plaintiff, Ann Deaner
Thomas J. Hagner, Esq. (#023401975)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANN DEANER<br><br>                    Plaintiff,<br><br>v.<br><br>LIFE INSURANCE COMPANY OF<br>NORTH AMERICA,<br><br>                    Defendant. | Civil Action No.:<br><br><br><br>**COMPLAINT** |

Plaintiff, Ann Deaner, by way of Complaint against Defendant, Life Insurance Company of North America, says:

1.  This is an action to redress the wrongful denial of long term disability benefits rightfully due to the Plaintiff pursuant to the ADT, LLC Group Disability Plan underwritten by Life Insurance Company of North America, of which she is a participant.

## JURISDICTION AND VENUE

2.  This action is brought pursuant to Sections 502(a)(1)(B), (a)(1)(3), (c), and (g)(1), of ERISA, 29 U.S.C. §1132(a)(1)(B) and (g)(1).    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §502(e)(1) of ERISA, 29 U.S.C. §1132 (e)(1).  Pursuant to §502(f) of ERISA, 29 U.S.C. §1132(f), this Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3.    Venue is proper in this District pursuant to 28 U.S.C. §1391(c) in that there were sufficient contacts in this District by Defendant including the marketing, selling and issuance of the subject policy of insurance as well as frequent contacts with the Plaintiff herein.

## PARTIES

4.    Plaintiff, Ann Deaner, is a New Jersey resident residing at 120 Wilson Ave., West Deptford, New Jersey 08096.

5.    Plaintiff is a participant in the health and welfare plan issued to her employer, ADT, LLC under Group Policy #VDT-980097 ("the Policy").

6.    The Policy at all times pertinent hereto was underwritten by Defendant, Life Insurance Company of North America (hereinafter "LINA"), which is a corporation engaged in the marketing, selling, and issuance of insurance policies in the State of New Jersey, County of Camden.

7.    Under the Policy a participant is considered disabled if, solely because of injury or sickness, he or she is (1) unable to perform the material duties of his or her regular occupation; or (2) unable to earn 80% or more of his or her indexed earnings from working in his or her regular occupation; and, after disability benefits have been payable for 24 months, a participant is considered disabled if, solely due to injury or sickness, he or she is (1) unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; or (2) unable to earn 60% or more of his or her indexed earnings.

## FACTUAL BACKGROUND

8.  Plaintiff was employed as a Service Technician for ADT, LLC where she had worked for the preceding 35 years.

9.  Plaintiff was employed until July, 2016 at which time she became disabled and unable to perform the duties of her regular occupation as a Service Technician for ADT.

10. Plaintiff applied for long-term disability benefits which were approved in January, 2017 and paid through February, 2019.

11. Plaintiff's occupation as a Service Technician for ADT required her to test and repair security systems by performing a variety of duties including troubleshooting malfunctioning alarms; performing inspections of alarms; examining alarm systems' mechanisms and components to replace, clean, adjust or repair them; operating and testing equipment; resetting customer alarms and stocking her service van with necessary equipment, among other things.

12. The physical demands of Plaintiff's job was such that she was no longer able to perform them due to severe lumbar degenerative disc disease as well as progressive arthritis of her lumbar spine with spondylosis.

13. On December 14, 2019 Plaintiff's long-term benefits were terminated.   The February 14, 2019 denial letter confirmed that LINA had agreed that the medical information on file "supported you being unable to work your own Medium occupation as a Service Alarm Technician because of your condition."

14. The February 14, 2019 denial letter however, explained that as of January 8, 2019 Plaintiff was being evaluated under a new standard; namely, "If you are able to perform the material duties of any occupation such as a Sedentary occupation."

15. According to the letter, Defendant determined that Plaintiff was capable of performing a Sedentary Occupation and identified two occupations which it deemed compatible with her work capacity sic i.e. Repair Order Clerk  - DOT Code#221.382.022; and Dispatcher, Service  - DOT Code#959.167.010.

16. Plaintiff submitted an administrative appeal on June 20, 2019 which included both medical, and also vocational documentation supporting Plaintiff's inability to perform the above alternative occupations.   Also submitted was a photograph of the front steps of Plaintiff's residence.

17. Plaintiff submitted the office visit notes of her treating physicians, Dr. Carlo and Dr. Fitzhenry as well as a recent lumbar spine x-ray and lumbar MRI.

18. The notes of Dr. Carlo provided confirmed the diagnosis of lumbar degenerative disc disease and progressive arthritis of the lumbar spine with spondylosis and further confirmed the aggravation of symptoms with prolonged sitting, standing or walking.

19. Dr. Carlo's notes also confirmed Plaintiff's prescription of Gabapentin and the significant side effects that she was suffering e.g. sedation, lethargy and loopiness.

20. Also provided with the administrative appeal was Dr. Carlo's May 20, 2019 Physical Ability Assessment confirming the limitation for sitting, standing or walking to only one-third of the day, significantly less than the "continually or almost continually" required by the alternative occupations suggested by Defendant.

21. In his report of May 31, 2019 Dr. Carlo, referencing Plaintiff's lumbar degenerative disc diseases, opined that she was restricted from prolonged sitting; and, if required to sit, was required to have a 15 minute break every 1 ½ to 2 hours during which time she would need to "get up and move around and/or sit in a reclined position in order to reduce joint

stiffness and pain, and have access to ice, if needed, to assist and reduce her pain and swelling at regular intervals."

22.     The Administrative Appeal also included a June 12, 2019 lumbar MRI which demonstrated Grade I anterolisthesis of L5 relative to S1 with bilateral L5 spondylosis defects and mild bilateral foraminal narrowing at L5 and S1.  The report also noted disc space narrowing at L5-S1 with disc desiccation and also disc desiccation at L2-L3.

23.     The appeal also included the notes of Dr. Fred McAlpin who had been treating Plaintiff for joint disease in the Plaintiff's knees.   Dr. McAlpin determined that Plaintiff's examination demonstrated findings consistent with arthritis causing symptoms in both knees.

24.     As part of the determination Plaintiff saw a doctor appointed by LINA on February 1, 2019 who "performed disability claim decision type examination…"   During the examination Plaintiff informed the doctor, Peter A. Feinstein, M.D. that she was taking Celebrex and Gabapentin.   Dr. Feinstein asked Plaintiff if she could possibly do a clerical type job.  Mindful of the medication side-effects she was experiencing, Plaintiff responded by asking whether she would be able to take her Gabapentin prescription. Rather than respond by considering the Gabapentin side effects, Dr. Feinstein "responded that was not part of the question," according to his report.

25.     Nevertheless, Dr. Feinstein in his report agreed that Plaintiff "could not go back to her old job as an alarm technician."   He further confirmed that "There is no evidence of malingering, secondary gain or other issues in terms of subjective symptom magnification."

26. However, Dr. Feinstein dismissed Plaintiff's use of Gabapentin because it was "non-narcotic" and, therefore, he "did not see where that would interfere with any work-related activities, whether taken or not."   In so doing Dr. Feinstein directly contradicted established medicine concerning the effects of Gabapentin.   Ultimately Dr. Feinstein simply opined that, despite Plaintiff's restrictions, she "would be capable of some type of work-related activity…"

27. Plaintiff's Administrative Appeal was denied by letter dated August 29, 2019.   In its determination Defendant relied upon a report by a Dr. Goril which imposed significant sitting, standing and walking restrictions; namely, changes in posture are needed every 15 minutes per hour."   Defendant repeated its earlier conclusion that Plaintiff was capable of performing the jobs of Repair Order Clerk and Dispatcher.   Defendant completely ignored concerns raised about the required typing and computer use which are inconsistent with Plaintiff's ability to type.

28. The August 28, 2019 appeal denial letter stated that if Plaintiff disagreed with the determination there were certain steps that she was entitled to follow including submitting a second appeal review within 180 days.

29. In connection with the second appeal letter, the letter states that it "may include written comments as well as any new information you may have."   The letter also stated that the additional information that could be submitted "may include, but is not limited to: Medical records from your doctor and/or hospital, test result reports, therapy notes, etc.

30. Accordingly, Plaintiff filed a second appeal on November 25, 2019.

31. The second level appeal noted that Dr. Goril's assessment contained the following limitation and restriction:  "Sit and stand at her own discretion  -  these activities can be

done throughout an 8 hour day but would require changes of posture every 15 minutes out of an hour."   It was noted that LINA's Transferrable Skills Analysis dated August 20, 2019 repeated Dr. Goril's assessment.

32.   The second level appeal clarified that from a vocational standpoint, Plaintiff is not capable of typing with anything close to proficiency.  Rather, she was capable of only "pecking a keyboard with two fingers on a limited and very slow basis."

33.   The second level appeal pointed out that LINA's Transferrable Skills Analysis included skills and abilities which the Plaintiff clearly did not possess i.e. reading scale drawings or blue prints; estimating jobs; and installation.

34.   The appeal pointed out that Plaintiff was previously employed as a repair technician, not in any type of office setting and that she was incapable of typing except in the most rudimentary fashion with an ability far less than that required by most employment positions.

35.   Additionally, in support of the appeal Plaintiff submitted a statement from the President of another local security system sales and installation company.  Specifically, Plaintiff provided a statement from Michael Carvin, the President of Spectracom, Inc., a security system sales and installation company which primarily sells and services security systems to residential customers in this general area and has been doing so for over 20 years.

36.   Mr. Carvin, explained that over the years Spectracom interviewed and employed numerous Repair Order Clerks, and that the ability to proficiently type was a mandatory skill set.

37.   Mr. Carvin stated that "A candidate that was only able to type very slowly, with two fingers, etc. would not be employable for this position."

38.   With respect to the restrictions and limitations assessed by Dr. Goril, Mr. Carvin
      explained that those restrictions and limitations were totally incompatible with
      employment.   As stated by Mr. Carvin, "This job would not allow the employee to sit
      and stand at his/her own discretion, permit the employee to get up from his or her chair
      every 15 minutes.  The job simply cannot be performed competently or reliably in that
      manner."

39.   The Administrative Appeal stated that the Transferrable Skills Analysis relied upon in the
      determination significantly exaggerated Plaintiff's abilities.  It was pointed out that both
      of the alternative occupations proposed required significant typing/computer use which
      the Plaintiff did not possess.   Referencing the Transferrable Skills Analysis, the
      Administrative Appeal noted that with respect to the job of Repair Order Clerk, the job
      involved a compilation of cost reports, preparation of bills and included typing of cost
      and work reports.   It was noted that a core duty of the job was the compilation and
      preparation of documentation relating to repair orders.

40.   The Administrative Appeal also noted that the occupation of Dispatcher required the
      maintenance of records using a computer terminal and the regular use of a computer to
      enter data and process information.

41.   It was pointed out that both jobs, according to the occupational source O*Net, required
      sitting continually or almost continually.   With respect to the job of Repair Order Clerk,
      the job required continuous sitting as well as sitting more than half the time and in many
      cases walking at least half the time.

42.     It was pointed out that the above requirements are inconsistent with LINA's own doctor's report, limiting walking to one-third of the day and sitting or standing to any two-thirds of the day, much less than "continually or almost continually," required by the job.

43.     LINA ignored the appeal for over 3 months and when pressed for a decision stated that it was refusing to consider the second appeal because in order to be considered the second appeal "must provide additional medical information that had not been reviewed previously."  As such, LINA's refusal to even consider the second level appeal flatly contradicted the actual appeal denial letter of August 28, 2019.

### FIRST COUNT – ERISA

40.     The Defendant has wrongfully failed and refused to provide Plaintiff with the benefits she is entitled to receive pursuant to the subject long-term disability policy despite Plaintiff having duly made a claim and exhausted all necessary administrative remedies.

41.     The failure of the Defendant to provide Plaintiff with long-term disability benefits is a violation of ERISA.

42.     As a direct and proximate result of the aforesaid denial of benefits, Plaintiff has sustained, and continues to sustain, economic loss and damage.

43.     Pursuant to §502(a)(1)(b) of ERISA, 29 U.S.C. §1132(a)(1)(b), Defendant is obligated to provide Plaintiff with all past and future benefits that have been wrongfully denied.

44.     Defendant's failures include, but are not limited to, the failure to pay benefits; and failure to consider Plaintiff's second level of appeal.

45.     Pursuant to §502(g)(1) of ERISA, 29 U.S.C. §1133(g) Defendant is also liable to Plaintiff for reasonable attorney's fees incurred and costs of this action.

**WHEREFORE**, Plaintiff, Ann Deaner, demands judgment against Defendant for:

1. An Order directing Defendant to provide Plaintiff benefits under the Plan;

2. An Order requiring Defendant to award to Plaintiff total disability benefits due and owing to her from the date of termination of benefits to the present, with an award of pre-judgment interest.

3. An Order declaring that Plaintiff is to continue to receive disability benefits in the future for as long as she continues to qualify for benefits under the Plan.

4. An Order requiring the Plan to continue to provide to Plaintiff all available benefits to which she is entitled as a disabled employee under the terms of the Plan and/or to instruct their agents, contractors or other entities, to establish all other benefits due to Plaintiff in her capacity as a disabled employee including, without limitation, continued medical, vision and dental insurance coverage, and continued life insurance coverage and pension credited service and vested service.   Plaintiff shall be reimbursed all monies paid for such benefits from the termination of her disability claim to the present, including reimbursement of all premiums paid for such benefits.

5. Payment of reasonable attorney's fees pursuant to 29 U.S.C. §1132(g), costs incurred in this action; and for such other and further relief as the Court deems appropriate, fair, and just under the circumstances.

**HAGNER & ZOHLMAN, LLC**
Attorneys for Plaintiff

BY: __*/s/ Thomas J. Hagner*__
Thomas J. Hagner

Dated: 3/23/20